**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**GAYE D. ROGERS,**

    **Plaintiff,**

                                          Civil Action 2:17-cv-412
                                          Judge Michael H. Watson
**v.**                                        Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Gaye D. Rogers ("Plaintiff"), brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply (ECF No. 17), and the administrative record (ECF No. 10). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of §405(g) for further consideration consistent with this Report and Recommendation.

# I. BACKGROUND

Plaintiff protectively filed her application for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income on August 13, 2013. In her application, Plaintiff alleged a disability onset of November 1, 2010. Plaintiff's application was denied initially, and upon reconsideration. Plaintiff sought a hearing before an administrative law judge. Administrative Law Judge Susan F. Zapf ("ALJ") held a video hearing on March 21, 2016, at which Plaintiff, represented by counsel, appeared and testified. Dennis Gustafson, a vocational expert ("VE"), also appeared and testified at the hearing. On April 27, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In her Statement of Errors, Plaintiff raises three issues. First, Plaintiff asserts that the ALJ's mental RFC determination does not consider the impact of Plaintiff's mental impairments. Within her first contention of error, Plaintiff argues that the ALJ failed "to properly explain her rationale in discrediting the opinion evidence that depicted greater functional restrictions than accounted for in the residual functional capacity." (ECF No. 11 at 7.) Second, Plaintiff asserts that the ALJ failed to identify Plaintiff's migraines at step 2 of the sequential evaluation. In addition, Plaintiff maintains that the ALJ's failure to identify migraines as a severe impairment at step 2 caused her to fail to consider the migraines as an impairment in the RFC determination. Finally, Plaintiff asserts that the ALJ failed to properly evaluate the severity and effects of Plaintiff's fibromyalgia.

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

At the hearing, Plaintiff testified that she last worked in 2010. (R. at 219.) She stated that she is unable to work because, "I can't think. I can't concentrate. I'm, I'm just a mess all the time." (R. at 225.) She testified further that she sleeps a lot and that her daughter takes care of her and cleans her house. (*Id.*)

With respect to the effects of her depression and anxiety, Plaintiff testified that she "end[s] up in the hospital every time" she has to do something with the public and that she finds going to "stores or anything" overwhelming. (R. at 228.) When asked if she had ever been hospitalized for a psychiatric condition, Plaintiff testified that she usually goes to the emergency room, where she is kept overnight. (*Id.*)

With respect to her physical impairments, Plaintiff testified that she has not required surgical intervention to treat arthritis or degenerative disc disease and that she does not require a brace or an assistive device for walking. (R. at 229.) She testified further that she is in pain "all the time," with her headaches "probably the worst," and that she has joint pain related to fibromyalgia. (R. at 231.) Plaintiff rated her pain severity at a level of 5 or 6 on a 0-10 scale. (*Id.*)

When asked how she spends her days, Plaintiff responded that she sleeps a lot, watches television, and plays games. (R. at 235-36, 242.) She testified that she does her laundry, could make a small meal for herself, such as a sandwich, and could clean a few dishes. (R. at 239-40.) When grocery shopping, Plaintiff's daughter goes with her, and they go late at night and only get

a few items. (R. at 241.) Plaintiff's daughter also handles Plaintiff's bank card and pays her bills for her. (*Id.*)

**B.     Vocational Expert Testimony**

The VE testified at the administrative hearing that Plaintiff's past jobs include department manager, a skilled, sedentary positon, and administrative clerk, a semi-skilled, light position. (R. at 246.) The VE then testified that a hypothetical individual of Plaintiff's age, education, and vocational profile who retained the residual functional capacity ("RFC")[1] that the ALJ ultimately assessed could perform Plaintiff's past work as an administrative clerk, though not as a department manager. (R. at 246.) The VE also testified that the hypothetical individual would have transferable skills to light, unskilled general office clerk, with 19,800 jobs in the state regional economy and 624,500 jobs in the national economy; and, a sedentary duty general office clerk, with 25,300 jobs in the state regional economy and 798,000 jobs in the national economy. (R. at 246-48.) The VE further opined that if the hypothetical individual were off task 15% of the work day, she "more likely than not" could not work. (R. at 251.) The VE added that if Plaintiff were to miss two days of work per month, there would be no unskilled jobs given this exceeds an employers' tolerance for being off work. (*Id.*)

### III.     RELEVANT RECORD EVIDENCE

**A.     James Spindler, M.S.**

In March 2014, Plaintiff was consultatively evaluated by James Spindler, M.S. (R. at 795-800.) Plaintiff described herself as a loner, yet also indicated she had a lot of friends with

---

[1] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

whom she socialized. (R. at 798.) She further indicated that she had a variety of hobbies, including sewing, scrapbooking, and completing craft projects. (*Id.*) Mr. Spindler found that Plaintiff's judgment was adequate, and noted that she was able to perform memory tasks and mathematical calculations accurately. (*Id.*) He also reported that although Plaintiff had some symptoms of anxiety, she generally was able to manage at home. (*Id.*) Mr. Spindler assessed unspecified depressive disorder, largely in remission; and generalized anxiety disorder. (R. at 799.) Mr. Spindler opined that Plaintiff seems capable of understanding, remembering, and carrying out instructions; sustaining a working pace and maintaining attention and concentration; responding appropriately to supervision and interaction with coworkers; and responding appropriately to routine work pressures in work settings. (R. at 800.)

**B.     Dorothy "Becky" Yontz, LISW-S**

Plaintiff was initially assessed for mental health care services by Dorothy "Becky" Yontz, LISW-S on April 28, 2015. Plaintiff presented to Ms. Yontz with chronic anxiety, depression, panic attacks, and low self-esteem, continuing since 2008. On examination, Ms. Yontz found that Plaintiff had an impaired attention span, difficulty concentrating and focusing, and was unable to perform simple math of "7s" without drawing it on the desk. Ms. Yontz diagnosed Plaintiff with depression, anxiety, and personality disorder.

On February 23, 2016, Ms. Yontz completed a medical source statement, noting that Plaintiff's diagnoses included depression and anxiety. (R. at 881-86.) Ms. Yontz opined that Plaintiff was severely impaired in her ability to remember procedure, instructions, pay attention; that she is unable to maintain punctuality and attendance; that she is highly distracted being around others or alone; that she has major impairment in her ability to make even the smallest

5

decisions; that her mental problems interrupt workday/week and impact pace of work; that she does not respond well to criticism; that she does not tolerate being asked questions or asked for help; that she suffers from a significant impairment with recent/immediate memory; and that her ability to be socially appropriate is very limited. (R. at 881-86.)

**C.     Barbara St. Clair, CNP**

Barbara St. Clair, CNP, treated Plaintiff for pharmacologic management on three occasions in 2015 and 2016. On February 29, 2016, Ms. St. Clair completed a medical source statement, noting that Plaintiff's diagnoses included depression, anxiety, and personality disorder. (R. at 875-80.) Ms. St. Clair opined that Plaintiff was "unable to meet competitive standards" in the abilities of: remembering work-like procedures; understanding and remembering very short and simple instructions; carrying out very short and simple instructions; maintaining attention for two-hour segments; maintaining regular attendance and being punctual within customary, usually strict tolerances; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being unduly distracted; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and responding appropriately to changes in a routine work setting. (*Id.*)

**D.     Nicolaas P. Dubbeling, Ph.D., Clinical Psychologist**

On February 25, 2016, Nicolaas Dubbeling, Ph.D., evaluated Plaintiff on referral from

her counsel. (R. at 948-950.) Dr. Dubbeling administered the Minnesota Multiphasic Personality Inventory-2, and found that Plaintiff had a "T score" of 115 on the "Validity Scale FBS-r, which taps Symptom Validity." (R. at 949.) Dr. Dubbeling noted that Plaintiff's score indicated that somatic and/or cognitive symptoms were present. (*Id.*) Ultimately, Dr. Dubbeling diagnosed Plaintiff with major depression disorder, recurrent; somatization disorder; and anxiety disorder. (R. at 950.)

On March 17, 2016, Dr. Dubbeling completed a medical source statement, in which he opined that the combination of depression, anxiety, and somatoform disorder precluded Plaintiff from any type of employment. (R. at 957.) Dr. Dubbeling also concluded that, due to depression-related psychomotor retardation, Plaintiff was probably less astute than she used to be. (R. at 958.)

**E.    State Agency Evaluations**

State agency psychologists, Leslie Rudy, Ph.D., and Robyn Hoffman, Ph.D., reviewed Plaintiff's record in March 2014 and July 2014, respectively. They concluded that Plaintiff had mild restrictions in her activities of daily living; moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace; with no episodes of decompensation of extended duration. (R. at 271, 313.) Drs. Rudy and Hoffman also opined that Plaintiff was capable of up to four-step tasks in a setting without demands for fast-pace, had the capacity to interact appropriately with familiar others and on an occasional basis with the general public, and could adjust to occasional changes with some supervisory support. (R. at 275-76, 316-17.)

**IV.    THE ADMINISTRATIVE DECISION**

On April 27, 2016, the ALJ issued her decision. (R. at 194-208.) The ALJ first found that Plaintiff meets the insured status requirements through December 31, 2015. At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since September 1, 2011, her alleged onset date. The ALJ found that Plaintiff has the severe impairments of hypothyroidism, obesity, depression, anxiety, arthritis, fibromyalgia, degenerative disc disease, and obstructive sleep apnea. She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the [ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is unable to climb ladders, ropes, or scaffolds; she is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; she is limited to detailed but not

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

8

> complex work tasks such as found in semiskilled work; she is limited to frequent but not constant changes in work processes and procedures; and, she is limited to occasional interaction with coworkers, supervisors, and the public.

(R. at 201.) In reaching this determination, the ALJ followed a two-step process. First, the ALJ found that "[a]fter careful consideration of the evidence, . . . [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.*) Second, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

In calculating Plaintiff's mental RFC, the ALJ afforded "limited probative weight" to the assessments of the state agency psychologists, Leslie Rudy, Ph.D. and Robyn Hoffman, Ph.D., reasoning that "[t]he record now includes additional medical evidence not considered by the[] state agency reviewing medical sources, and the additional medical evidence as well as the testimony of the claimant at the hearing demonstrated that the claimant is capable of performing at least semiskilled work." (R. at 203.) The ALJ also assigned little weight to Dr. Dubbeling's opinion, noting that the "T scores" on testing performed by Dr. Dubbeling undermined Plaintiff's allegations, and that, although Dr. Dubbeling was an acceptable medical source, he had not treated Plaintiff. (R. at 204.) The ALJ also determined that the opinions from Ms. St. Clair, Plaintiff's therapist, and Nurse Practitioner Yontz were not entitled to significant probative weight, as they are considered "unacceptable medical sources;" their assessments are contradicted by own treatment notes; and their assessments are directly contradicted by the claimant's description of her daily activities, which show only mild limitations. (R. at 203-04.)

Relying on the VE's testimony, the ALJ found that Plaintiff can perform her past job as an administrative clerk, as well as jobs that exist in significant numbers in the national economy. (R. at 205-08.) She therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 208.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*

v. *Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

The undersigned agrees that the ALJ's failure to properly explain her rationale in rejecting opinion evidence and arriving at Plaintiff's mental RFC determination requires remand. The undersigned therefore declines to analyze and resolve the alternative bases Plaintiff asserts support reversal and remand.

The regulations provide that where, as here, the ALJ does not assign controlling weight to the claimant's treating physician, he or she must explain the weight assigned to the opinions of the medical sources:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(e)(2)(ii).

As set forth above, with regard to the opinion evidence relating to Plaintiff's mental impairments, the record contains a March 2014 opinion from consultative examiner Mr.

11

Spindler, a March 2014 opinion from state agency reviewer Dr. Rudy; a July 2014 opinion from state agency reviewer Dr. Hoffman, a February 2016 opinion from treating counselor Ms. Yontz; a February 2016 opinion from treating Nurse Practitioner St. Clair; and a February 2016 opinion from consultative examiner Dr. Dubbeling. The ALJ did not indicate what weight he assigned Mr. Spindler's opinion. The ALJ rejected the opinions of treating counselor Ms. Yontz, Nurse Practitioner St. Clair, and Dr. Dubbeling, all of whom opined that Plaintiff required a significantly more restrictive mental RFC than the ALJ assessed. The ALJ appears to have accorded the opinions of state agency reviewers Drs. Rudy and Hoffman the greatest weight, yet she only assigned their opinions "limited probative weight" and rejected their opinions that Plaintiff required work without demands for fast pace and that Plaintiff was limited to only occasional changes with some supervisory support. The ALJ's sole explanation for rejecting these limitations was that the "[t]he record now includes additional medical evidence not considered by the[] state agency reviewing medical sources, and the additional medical evidence as well as the testimony of the claimant at the hearing demonstrated that the claimant is capable of performing at least semiskilled work." (R. at 203.)

Although the ALJ's explanation for the weight she credited the opinions of state agency reviewers Drs. Rudy and Hoffman satisfies the procedural requirements set forth in 20 C.F.R. § 416.927(e)(2)(ii), it appears to lack record support. The ALJ generally references "additional medical evidence" that Drs. Rudy and Hoffman did not consider, but fails to identify what medical evidence supports her conclusion. (R. at 203.) Significantly, *all* sources rendering opinions regarding Plaintiff's mental impairments *after* Drs. Rudy and Hoffman issued their opinions found Plaintiff to be even more limited than Drs. Rudy and Hoffman opined. The ALJ

12

also relies upon "the testimony of the claimant at the hearing," but again fails to identify any statements Plaintiff made that support the ALJ's rejection of Drs. Rudy and Hoffman's opined pace and adaptation limitations. The undersigned's independent review of Plaintiff's hearing testimony failed to reveal what statements Plaintiff made that the ALJ might have been relying upon to discount the opined limitations.

The undersigned is likewise unable discern how the ALJ arrived at Plaintiff mental RFC determination. Plaintiff speculates that the ALJ substituted her lay opinion, pointing out that the ALJ declined to accord probative value to any of the mental health opinions. The determination of a claimant's RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted). An ALJ is required to explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can

perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

Here, the ALJ concludes that the RFC she assessed is "supported by the medical evidence of record, by treatment notes from attending physicians and other medical sources, by assessments of state agency reviewing physicians, by other medical reports, and by the claimant's description of daily activities." (R. at 205.) As discussed above, however, the ALJ has failed to identify what particular medical evidence or treatment notes she has relied upon, and it is not otherwise apparent upon review of the record. Further, the assessments of the state agency reviewing physicians' opinions do not, as the ALJ suggests, support the mental RFC she opined. The undersigned acknowledges that the ALJ has, however, offered ample discussion in support of her conclusion that Plaintiff is only "mildly restricted in her ability to perform a wide range" of activities of daily living. (*See* R. at 200, 202.) But she fails to explain how Plaintiff's performance of her daily activities supports her RFC assessment. Indeed, like the ALJ, state agency reviewers Drs. Rudy and Hoffman also opined that Plaintiff had only mild restriction in her ability to perform her activities of daily living, yet they concluded that Plaintiff nevertheless required pace and adaptation restrictions that the ALJ omitted from Plaintiff's mental RFC. (*See* R. at 201, 271, 275-76, 313, 316-17.)

Ultimately, the ALJ's lack of articulation prevents this Court from conducting meaningful review to determine whether substantial evidence supports her decision. *See Rogers* 486 F.3d at 248 (quoting *Hurst*, 753 F.2d at 519) ("It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely

essential for meaningful appellate review."); *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (noting that an ALJ's decision "must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'" (quoting 5 U.S.C. § 557(c)(3)(A))).

This Court must, therefore, remand this action for an explanation of the reasoning supporting the ALJ's rejection of the state agency reviewers' opinions and also her RFC determinations. *See, e.g., Evans v. Comm'r of Soc. Sec.*, No. 1:10–cv–779, 2011 WL 6960619, at *14, 16 (S.D. Ohio Dec. 5, 2011) (Report and Recommendation), *adopted*, 2012 WL 27476 (S.D. Ohio Jan. 5, 2012) (remanding where the Court was "unable to discern from the ALJ's opinion how he arrived at the RFC decision and what evidence he relied on in making that decision," explaining that "[s]imply listing some of the medical and other evidence contained in the record and setting forth an RFC conclusion without linking such evidence to the functional limitations ultimately imposed in the RFC is insufficient to meet the 'narrative discussion' requirement of SSR 96–8."); *Perkins v. Comm'r of Soc. Sec.*, No. 1:10-cv-233, 2011 WL 2457817, at *5–6, 9 (S.D. Ohio May 23, 2011) (Report and Recommendation), *adopted*, 2011 WL 2443950 (S.D. Ohio June 16, 2011) (same); *Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *8 (N.D. Ohio Apr. 4, 2012) (remanding where "the ALJ failed to properly articulate the RFC calculation," explaining that the Court was "unable to trace the path of the ALJ's reasoning"); *Commodore v. Astrue*, No. 10-295, 2011 WL 4856162, at *4, 6 (E.D. Ky. Oct. 13, 2011) (remanding action "with instructions to provide a more thorough written analysis," where the ALJ failed to articulate the reasons for his RFC findings such that the Court could not "conduct a meaningful review of whether substantial evidence supports the ALJ's decision").

## VII. DISPOSITION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, the undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## VIII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

 /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE